WO                                                                    SH

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rick Wayne Valentini, | No. CV 18-04247-PHX-MTL (DMF) |
| Plaintiff, | |
| v. | **ORDER** |
| Charles L. Ryan, et al., | |
| Defendants. | |

Plaintiff Rick Wayne Valentini, who is currently confined in Arizona State Prison Complex (ASPC)-Eyman in Florence, Arizona, brought this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1.) Defendants Erwin and Porter move for summary judgment, and Plaintiff opposes.[1] (Docs. 22, 26.)

**I.     Background**

Upon screening Plaintiff's Complaint (Doc. 1) pursuant to 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated access-to-court claims against Defendants Corrections Officer III Roland and Property Officer Jane Doe in Count Two and against Sgt. John Porter and Legal Access Monitor Julia Erwin in Count Six. (Doc. 6.) The Court directed Defendants Roland, Porter, and Erwin to answer and gave Plaintiff 120 days to identify Defendant Doe and file a notice of substitution with her actual name. (*Id.*) The Court dismissed the remaining claims and Defendants. (*Id.*)

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), regarding the requirements of a response. (Doc. 24.)

On March 6, 2020, Magistrate Judge Deborah Fine issued a Report and Recommendation (R&R) recommending that Defendants Jane Doe and Roland be dismissed for failure to substitute and/or serve. (Doc. 30.) Defendants Porter and Erwin now move for summary judgment and argue that Plaintiff failed to exhaust the available administrative remedies and that they did not deny Plaintiff access to the courts. (Doc. 22.)

## II.   Report and Recommendation

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). It is "clear that the district judge must review the magistrate judge's findings and recommendations de novo *if objection is made,* but not otherwise." *United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc); accord Schmidt v. Johnstone,* 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003) ("Following *Reyna-Tapia,* this Court concludes that *de novo* review of factual and legal issues is required if objections are made, 'but not otherwise.'"); *Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.,* 589 F.3d 1027, 1032 (9th Cir. 2009) (the district court "must review de novo the portions of the [magistrate judge's] recommendations to which the parties object"). District courts are not required to conduct "any review at all . . . *of any issue* that is not the subject of an objection." *Thomas v. Arn,* 474 U.S. 140, 149 (1985) (emphasis added); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the [R&R] to which objection is made.").

On March 6, 2020, the Magistrate Judge recommended dismissing Defendants Roland and Jane Doe without prejudice for failure to serve. (Doc. 30.) Neither party filed objections to the R&R, and the time to do so has expired. The Court is therefore not obligated to review the R&R. *See Reyna-Tapia*, 328 F.3d at 1121 ("[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to"). Even so, the Court has reviewed Judge Fine's R&R and incorporates and adopts it. Accordingly, Defendants Jane Doe and Roland are dismissed from the action without prejudice for failure to serve. Because Defendants Doe and Roland

1 are the only Defendants remaining in Count Two, the Court will also dismiss Plaintiff's access-to-court claims against Defendants Doe and Roland in Count Two.

**III.     Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3). . . .

**IV. Exhaustion**

    **A. Legal Standard**

Under the Prison Litigation Reform Act, a prisoner must exhaust "available" administrative remedies before filing an action in federal court. *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926, 934-35 (9th Cir. 2005). The prisoner must complete the administrative review process in accordance with the applicable rules. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006). Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The defendant bears the initial burden to show that there was an available administrative remedy and that the prisoner did not exhaust it. *Albino v. Baca*, 747 F.3d 1162, 1169, 1172 (9th Cir. 2014); *see Brown*, 422 F.3d at 936-37 (a defendant must demonstrate that applicable relief remained available in the grievance process). Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. The ultimate burden, however, rests with the defendant. *Id.* Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust. *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).

If summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge; a plaintiff is not entitled to a jury trial on the issue of exhaustion. *Albino*, 747 F.3d at 1170-71. But if a court finds that the prisoner exhausted administrative remedies, that administrative remedies were not available, or that the failure to exhaust administrative remedies should be excused, the case proceeds to the merits. *Id.* at 1171.

. . .

### B. Relevant Facts

#### 1. Plaintiff's Claim

In Count Six, Plaintiff alleges that on November 15, 2016, while he was housed in the Santa Rita Yard at ASPC-Tucson, Plaintiff turned in his Motion for Review for the Court of Appeals to the librarian for copying. (Doc. 1 at 16.) On November 17, 2016, Defendant Porter led a group of correctional officers to Plaintiff's cell to seize all of Plaintiff's legal paperwork and personal property, including all four copies of his Motion for Review. (*Id.*) On November 18, 2016, Plaintiff received a redacted and blacked out copy of the Motion for Review, in which Defendant Erwin had removed evidence from the Motion and had blacked out other pages of the Motion. (*Id.*) Plaintiff's six property boxes were sent to Central Office on November 21, 2016, and Defendant Erwin inspected every piece of paper in the box and removed significant portions of Plaintiff's legal discovery paperwork. (*Id.*) As a result, Plaintiff's ability to represent himself in his criminal appeals "was irreversibly damaged from Julia Erwin's seizure and destruction of critical evidence in both appeals." (*Id.* at 16-17.) Erwin also removed critical evidence in order to obstruct Plaintiff's ability to prove issues in his "Writ of Habeas Corpus."

#### 2. Arizona Department of Corrections (ADC) Grievance Process

Department Order ("DO") #802, *Inmate Grievance Procedure*, effective October 16, 2016, governs the ADC's inmate grievance procedure and is the version that was in effect when Plaintiff's claim arose. (Doc. 23 (Defs.' Statement of Facts) ¶ 1.)[2] A written copy of the grievance policy is available to prisoners at each prison unit's Inmate Resource Library, and prisoners also receive a written and oral explanation of the grievance policy during intake and as part of the orientation process when they transfer to a new facility. (*Id.* ¶ 5.)

---

[2] Defendants did not provide a copy of DO 802 with their exhibits, but a copy of the effective version is available to the public at the ADC website. *See* https://corrections.az.gov/sites/default/files/policies/800/0802_032519.pdf (last visited Mar. 27, 2020).

The grievance process for non-medical grievances is a four-step review process for prisoners to seek resolution of issues they encounter while incarcerated. (*Id.* ¶ 8.) First, a prisoner must attempt to solve his complaint through informal means by discussing the issue with staff in the area most responsible for the complaint. (*Id.* ¶ 9.)

If the prisoner is unable to resolve his complaint informally, the second step of the grievance process is for the prisoner to submit an Informal Complaint Resolution to the unit CO III. (*Id.* ¶ 10.) If the prisoner is not satisfied by the CO III's response, within five workdays the prisoner may proceed to the third step of the grievance process and submit a Formal Grievance to the Grievance Coordinator who will then log the Formal Grievance and forward it to the Deputy Warden for a response. (*Id.* ¶¶ 12–13.)

If the prisoner is not satisfied by the Deputy Warden's decision, within five workdays the prisoner may proceed to the fourth and final step of the grievance process and submit a Grievance Appeal to the Grievance Coordinator who will then log the Grievance Appeal and forward it to the Central Office Grievance Appeals Officer for a response. (*Id.* ¶¶ 14 –16.) The Appeals Officer will prepare a response and submit it to the ADC Director for approval and signature. (*Id.* ¶ 16.) The Director's decision is final. (*Id.* ¶ 17.)

If a prisoner does not receive a timely response from the designated prison official at any point during the grievance process, the prisoner may proceed to the next stage of the grievance process the day after the response was due.[3]

### 3. Plaintiff's Grievance History

Plaintiff was housed at the ASPC-Tucson, Santa Rita Unit from September 29, 2016 until March 30, 2017. (*Id.* ¶ 19.) On November 28, 2016, Plaintiff submitted an Informal Complaint Resolution to CO III Millhoff in which he complained that on November 17, 2016, "ADOC" entered his cell and seized several boxes of his "legal discovery paperwork" including legal correspondence between Plaintiff and his attorneys and family

---

[3] *See Inmate Grievance Procedure*, DO 802 § 1.10.1, https://corrections.az.gov/sites/default/files/policies/800/0802_032519.pdf (last visited Mar. 27, 2020).

members, a "legal journal," "federal documents," and "state documents." (Doc. 23-4 at 3 (Defs.' Ex. 4).) Plaintiff demanded the return of his legal paperwork. (*Id.*)

On December 14, 2016, CO III Millhoff responded that: "As verbally confirmed by yourself on 12/07/16 all authorized property has been returned to you. Items which you are not authorized to possess per policy are held for you in a secure location on Santa Rita Unit." (*Id.* at 4.)

On February 6, 2017, Plaintiff submitted a Grievance Appeal in which he stated that he submitted a Formal Grievance on January 12, 2017 regarding his confiscated legal documents, but he never received a response. (Doc. 23-5 at 1 (Defs.' Ex. 5).) Plaintiff complained that the documents were "illegally and unconstitutionally seized" and "ha[d] not been found." (*Id.*) A note at the bottom of the Grievance Appeal indicates that it "was returned unprocessed for being out of time frames. Grievance [was] due by 1/5/17, you submitted it 2/6/17." (*Id.*)

**C. Discussion**

Defendants have met their initial burden at summary judgment of showing that there was an administrative remedy available to Plaintiff as outlined in DO 802 and that Plaintiff did not complete this process with regard to his access-to-court claim against Defendants. Accordingly, the burden shifts to Plaintiff to either show that he exhausted his threat-to-safety claim or that the administrative remedy was effectively unavailable to him. *Albino*, 747 F.3d at 1172. The facts in the record do not support either finding.

In his response, Plaintiff asserts that he filed an Informal Complaint Resolution on November 28, 2016 and that he "attempted verbal communication" with several prison officials between November 28 and December 15, 2016. (Doc. 26 at 2.) But Plaintiff did not submit any evidence, such as a signed declaration, to support this argument. Further, even if Plaintiff did not receive CO III Millhoff's December 14, 2016 Informal Complaint Response, under the provisions of DO 802, Plaintiff was entitled to proceed to the next step of the grievance process the day after Millhoff's response was due, which would have been January 5, 2017. Plaintiff claims that he attempted to submit two Formal Grievances on

January 9, 10, and 11, 2017, and he was "refused"; but these claims are not supported by any record evidence, and even if they were taken as true, the grievances would have been untimely under DO 802. (*Id.* at 3.) The only evidence Plaintiff submitted to support his response to the Motion for Summary Judgment are copies of several grievance documents—one Formal Grievance and five Grievances Appeals—that he contends show he exhausted his claim. (Doc. 26 at 13–18.) But the quality of these copies is extremely poor, and their contents are unintelligible, so the Court is unable to ascertain what issues Plaintiff was grieving in these documents. (*See id.*) Moreover, the date on these documents indicate that Plaintiff submitted the Formal Grievance and two of the Grievance Appeals on February 6, 2017; one of the Grievance Appeals on February 13, 2017; and two of the Grievance Appeals on March 7, 2017. (*Id.*) These were all submitted well outside of the timeframes outlined in DO 802.

On this record, where Defendants have met their initial burden, and Plaintiff has not created a material of fact that he exhausted his access-to-court claim in Count Six or that the grievance process was not available to him, the Court will grant summary judgment to Defendants on the issue of exhaustion and dismiss the action without prejudice. *See Lira v. Herrera*, 427 F.3d 1164, 1170 (9th Cir. 2005) (If a court grants summary judgment on non-exhaustion grounds, dismissal is without prejudice).

**IT IS ORDERED:**

(1)     The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment (Doc. 22).

(2)     The Report and Recommendation (Doc. 30) is **adopted**, and Defendants Jane Doe and Roland are dismissed from the action **without prejudice** for failure to serve.

(3)     Plaintiff's access-to-court claim in Count Two against Defendants Jane Doe and Roland is **dismissed without prejudice**.

(4)     Defendants Porter and Erwin's Motion for Summary Judgment (Doc. 22) is **granted.** Defendants Porter and Erwin and Plaintiff's access-to-court claim in Count Six are **dismissed without prejudice** for failure to exhaust administrative remedies.

(5) There being no Defendants or claims remaining, the action is terminated, and the Clerk of Court must enter judgment accordingly.

Dated this 31st day of March, 2020.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge